United States District Court
Southern District of Texas
**ENTERED**
November 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **SHEREEN SURAYA DEVRIES,** | § § § § § § § § § § | |
| Plaintiff, | | |
| VS. | | CIVIL ACTION NO. 4:21-CV-00753 |
| **HARRIS COUNTY, TX,** *et al.*, | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

Plaintiff Shereen DeVries brings wrongful termination and failure to promote claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. against the Harris County Fire Marshal's Office ("the Office"), and First Amendment retaliation claims under 42 U.S.C. § 1983 against individuals Fire Marshal Laurie L. Christensen, Chief Robert W. Royall, Jr., and Deputy Chief Chad J. Shaw ("individual defendants").

Now pending before the Court are Defendants' Motion for Summary Judgment and Motion for Leave to File Amended Answers. The Court heard argument on these motions at a November 18, 2022 hearing. After considering the motions and applicable law, Defendants' Motion for Summary Judgment is **GRANTED**. Defendants' Motion for Leave to File Amended Answers is **DENIED** as moot.

## I.   INTRODUCTION

### A.  Factual Background

#### 1.  Plaintiff's Termination

Plaintiff is a white woman of partial Iranian descent. She began working for the Office in October 2004, eventually climbing to the rank of Senior Hazmat Technician. (Doc. 1 at 5.) The Office terminated Plaintiff's employment in August 2020, after an investigation concluded that she violated the Office's non-discrimination and non-harassment policies when she used offensive and demeaning language against a Black colleague. (Doc. 32 at 8.)

The investigation arose in response to a July 2020 incident. During a shift change, Plaintiff conversed with two co-workers—Curtis Garmon, a white male, and Johnathon Blue, a Black male. Blue was new to the Office at the time of the incident. (Doc. 32-5 at 5.) The conversation touched on current events, racial justice, and systemic racism. *Id.* at 9. Plaintiff shared her views, in her own words, "about the Marxist ideology becoming pervasive in the Black Lives Matter Inc. organization as boasted by one of their founding members, and . . . the degradation of the family unit as outlined on the . . . website." (Doc. 1 at 5.) The conversation then turned to Black families and interracial relationships.

According to Plaintiff, Garmon stated that "fatherless homes" were "disproportionate in the black community and [that] this adversely affected children being raised by single mothers." (Doc. 34 at 3.) Plaintiff then asserted that past events had resulted in the "degradation of the black family" and that the Black Lives Matter movement continued to promote this. (Doc. 32-5 at 24.)

At some point in the conversation, Blue said he was married to a white woman. Plaintiff responded that Blue was "part of the problem." Blue was uncomfortable, and Plaintiff did not press the conversation further. *Id.* at 25. In her statement to the Office following the incident, Plaintiff

explained that this "was not my own opinion and was grossly misrepresented and was . . . removed from context. I asked if he knew that would mean he would be viewed as a problem from others within the black community for choosing a white woman over a black woman." *Id.* at 24. She further emphasized that she is from a mixed-ethnicity family. *Id.*

Two supervisors, Adam Aiken and Sean Webb (both white males), overheard or were aware of the conversation. Neither took action to address the incident. (Doc. 32-5 at 2-3, 6.) The following day, Garmon apologized to Blue for the discussion. *Id.* Blue shared the conversation with co-workers, who urged him to report the incident. Blue did not do so, expressing his wish to avoid tension and stating that he felt this situation was resolved. *Id.* at 12-13. However, Blue continued to discuss the incident with co-workers and sought to switch shifts to avoid working with Plaintiff. *Id.* at 5, 34. A co-worker reported the events to Human Resources. *Id.* at 3.

The Office initiated an investigation into the incident. (Docs. 32 at 11; 32-5 at 2.) Deputy Chief Chad Shaw and Captain Richard Lawhorn informed Plaintiff of the investigation and gave her an employee notification complaint form, which she signed. (Doc. 32-4.) The document cited Harris County and Office non-discrimination and non-harassment policies that Plaintiff had allegedly violated. It also summarized the accusations. (Doc. 32-5.)

All five individuals allegedly involved in the events—Plaintiff, Garmon, Blue, Webb, and Aikin—were required to give statements. Plaintiff provided a written statement describing the events in detail and asserting that she had a right to comment. (Doc. 32-5 at 23-25.) She also acknowledged that she was aware Blue was upset by the conversation. *Id.*

The Office concluded that Plaintiff had violated the County's non-discrimination policies when she targeted statements to a newly-hired Black colleague that were offensive and demeaning. (Doc. 32-5 at 5, 7.) Shaw and Lawhorn determined that Plaintiff was a senior employee who should

3

have known department policies, was aware of the impact of her words, and showed no restraint or remorse. *Id.* Based on these findings, the investigators recommended that the Office terminate Plaintiff. Investigators also recommended that the Office terminate Garmon's employment for his participation in the conversation and demote Webb and Aikin for failing to respond adequately. (Doc. 32 at 13-14.)

The Office offered Garmon and Plaintiff an opportunity to resign. Garmon accepted the offer. *Id.* Plaintiff refused, and her employment was terminated. *Id.* In addition, the Office demoted the two supervisors. *Id.*

Plaintiff alleges that the Office treated her less favorably than similarly situated male employees such as Blue, Garmon, Aiken, and Webb throughout the investigation process and in the discipline imposed. Plaintiff contends that the department did not follow official human resources policy; that she was not given information about the accusations; that the men were given interviews while she was not; and that the investigation was biased, made assumptions, and left out key facts. (Doc. 1 at 5-6.) In addition, Plaintiff alleges that she was treated dissimilarly to her colleagues in her termination—Garmon is eligible for rehire (and allegedly encouraged to reapply following his termination), and the Office took no action against Blue. *Id.* at 6. Finally, Plaintiff alleges that a non-Iranian male replaced her. *Id.* Defendant denies this "but admit there were three persons hired after Plaintiff's termination for positions in the expanded department." (Doc. 3 at 5.)

### 2. Failure-to-Promote

Plaintiff also alleges that she was passed over for a promotion that she believed was promised to her in November 2019. She states that a supervisor had told her she was the "heir apparent." (Docs. 33 at 8; 33-A.) The stated reason for not being chosen was her interpersonal skills. (Doc. 1 at 5; Doc. 33-A.) Plaintiff viewed this as a "thinly viewed slight regarding [her]

4

sex." (Doc. 33-A.) The individual that the Office promoted in her stead had less experience, no higher education degrees or advanced certificates, and no second language. (Docs. 33 at 8; 33-A.)

### 3. Previous Experiences of Harassment

Plaintiff alleges several incidents of discrimination because of her sex and national origin. Plaintiff alleges that a supervisor had frequently called her a "half-terrorist," and given her a ceramic camel on a separate occasion. (Docs. 1 at 5; 33-B at 80, 127.) Another supervisor had made inappropriate comments to Plaintiff after a breast augmentation, commented on her weight, and used inappropriate slurs against her. (Doc. 33-B at 86-87.) Plaintiff reported at least one of these incidents; however the Office allegedly took no action other than an oral reprimand. (Doc. 33-B at 85.)

In her deposition, Plaintiff also alleges that co-workers falsely accused her of sleeping with male colleagues throughout her employment with the Office. (Doc. 33-B at 54-58.) She states that she was ignored when she complained about being treated unequally. *Id.* at 59. In addition, Plaintiff says that "it seems to be more common" for females at the Office to be terminated or otherwise targeted based on accusations from colleagues. *Id.* at 110-11. Finally, Plaintiff alleges Blue had made "comments to me of a sexually-harassing nature" before he worked for the department. *Id.* at 97-98. She shared these comments with the hiring committee when Blue applied for a job with the Office but otherwise did not report them. *Id.*

### B. Procedural History

In November 2020, Plaintiff filed a Charge of Discrimination with the Texas Workforce Commission ("TWC")'s Civil Rights Division and Equal Employment Opportunity Commission ("EEOC"). (Doc. 32-2.) Plaintiff brought the EEOC complaint against her employer, alleging

5

discrimination in terminating and failing to promote Plaintiff based on her race, sex, and national origin. *Id.* She received a right-to-sue letter in December 2020. (Doc. 32-3.)

In 2021, Plaintiff filed the present action. (Doc. 1.) Her claim sheet alleges Title VII and § 1983 discrimination based on retaliation and termination, for which she seeks back pay and reinstatement or front pay. She does not select failure to promote on the claim sheet, but makes these allegations in her statement and previously included these allegations in her EEOC complaint. *Id.* at 5. Plaintiff names the Office, as well individuals Deputy Chief Chad J. Shaw, Fire Marshal Laurie L. Christensen, and Chief Robert W. Royall, Jr., as Defendants. These individuals led the department and investigated Plaintiff.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal citation omitted). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any

6

matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

### B. Title VII Discrimination Claims Against the Office

First, Plaintiff alleges race, sex, and national origin discrimination against the Office under Title VII of the Civil Rights Act of 1964. Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, . . . sex, and national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff also states in her Response to Defendants' Motion for Summary Judgment that she brings claims under Chapter 21 of the Texas Labor Code; however, she does not indicate this in her initial complaint. (Docs. 1; 33 at 5.)

Courts analyze claims under Title VII differently depending on whether the plaintiff asserts direct evidence or circumstantial evidence of discrimination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir. 2001). Discrimination claims that rely on indirect or circumstantial evidence are governed by a burden-shifting framework. Under this framework, the plaintiff must first establish a prima facie case of discrimination: the plaintiff must show that she (1) is a member of a protected group (pregnant women); (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than other similarly situated employees, or was replaced by a person who was not a member of her protected group. *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). If the plaintiff establishes the prima facie case, they establish a presumption of discrimination. The burden then shifts to the employer to provide a "legitimate, nondiscriminatory

7

reason" for its employment action. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142-43 (2000); *McCoy*, 492 F.3d at 557. The plaintiff must then respond with evidence showing the employer's proffered explanation as a mere pretext for discrimination. *Reeves*, 530 U.S. at 143. "[A] plaintiff can avoid summary judgment if the evidence, taken as a whole: (1) creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer and (2) creates a reasonable inference that [a protected trait] was a determinative factor in the actions of which plaintiff complains." *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 141 (5th Cir. 1996).

> [A]n employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act . . . . It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision.

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013).

### 1. Termination

Plaintiff first asserts that her termination constitutes discrimination based on her race, sex, and national origin. She fails to make a prima facie case for discrimination.

As a (1) white female of Iranian descent who (2) had successfully served the Office for over fifteen years before (3) her termination, Plaintiff fulfills the first three criteria for a prima facie case of Title VII discrimination. But Plaintiff does not demonstrate that she was either replaced by a person who was not a member of her protected group or treated less favorably than other similarly situated employees. Plaintiff alleges that the Office hired a white male as her replacement but offers no evidence to buttress this assertion, and Defendant answers that no one individual was hired to replace Plaintiff. (Doc. 3 at 5.)

Likewise, Plaintiff fails to establish that she was treated less favorably than other similarly situated employees. Garmon, who participated in the conversation with Plaintiff, was given the

8

same choice as Plaintiff—resign or be terminated. Garmon chose to resign, which came with the possibility of reinstatement. Plaintiff did not. Even if these punishments seem uneven, Garmon's actions differed from the Plaintiff's. Garmon did not personally attack Blue, and he reached out to apologize to Blue the day after the conversation. Plaintiff expressed no remorse throughout the investigation process. Likewise, the Office demoted the two other male supervisors for their failure to act on reports about the conversation. The significant consequences faced by these three white males lend support to the Office's arguments that it had non-discriminatory reasons for terminating Plaintiff.

Because Plaintiff fails to make a prima facie case for discrimination based on any protected characteristic, the Court need not inquire further. However, even if the Court took Plaintiff's assertion that the Office hired a white male to replace her as true, Plaintiff would fail to establish a discrimination claim. Defendant provides evidence—including written statements developed in the investigation and department policies—that it acted in response to Plaintiff's racially charged and insensitive statements. Further, Defendant argues that the Office would have opened itself up to liability for failure to respond to the conversation had it not acted. Defendant's interest in creating a tolerant and safe workplace for all employees is a legitimate and non-discriminatory reason for choosing to terminate.

Plaintiff does not successfully rebut this argument. Plaintiff makes two arguments. First, she alleges that similarly situated individuals were treated differently throughout the investigation and subsequent repercussions. As the Court discusses in its analysis of Plaintiff's prima facie case, Plaintiff does not substantiate this assertion.

Second, Plaintiff cites prior instances of sexism and racism as evidence that her termination was motivated by discriminatory intent. Plaintiff does demonstrate that she faced sexism and

unevenly applied anti-harassment policies at the Office. However, Plaintiff does not provide evidence to demonstrate that the sentiment motivating her supervisors and co-workers to make these inappropriate comments also motivated her termination. Most of these incidents happened over a decade prior, and Plaintiff alleges many in vague terms. *See Grimes*, 102 F.3d at 141 (5th Cir. 1996) ("[A] plaintiff must present evidence sufficient to create a reasonable inference of discriminatory intent in order to avoid summary judgment."); *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) (stating that a comment made one year before adverse employment action and unrelated to employment action does not establish a genuine issue of material fact regarding pretext); *Lister v. Nat'l Oilwell Varco, L.P.*, 2013 WL 5515196, at *19 (S.D. Tex. Sept. 30, 2013) (holding that racist comments made at least a year before the plaintiffs' terminations, "while tone deaf and offensive," are "too attenuated and too remote in time from the decisions to fire the plaintiffs or support an inference of discrimination"). Simply showing that she faced harassment or that the Office did not fairly apply its policies is not enough to demonstrate that the Office's proffered, non-discriminatory reasons were pretext in the present case.

The Court concludes that Plaintiff fails to support her discrimination claim with evidence that her termination was motivated by discriminatory intent.

### 2. Failure-to-Promote

The Court now turns to Plaintiff's failure-to-promote claim. Plaintiff's claim is first barred because Plaintiff failed to exhaust administrative remedies within the statute of limitations. Filing an EEOC charge against the employer is a precondition to filing suit in district court. *See Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Plaintiffs' "failure to promote" claims are considered discrete acts. *N'tl R.R. Passenger Cor. v. Morgan*, 536 U.S. 101, 114 (2002) ("Discrete acts such as . . . failure to promote . . . are easy to identify"). To maintain a Title VII

claim, a plaintiff must have filed discrimination charges with the EEOC or TWC within 300 days of any alleged "failure to promote" occurring. 42 U.S.C. § 2000e–5(e)(1); *Lewis v. City of Chicago*, 560 U.S. 205, 210-11 (2010). Plaintiff filed an EEOC complaint in November 2020, more than 300 days after the November 2019 alleged adverse action.

Second, Plaintiff fails to prove that the Office's proffered non-discriminatory reasons were pretextual. Plaintiff establishes a prima facie case for discrimination based on sex and national origin. Plaintiff was a senior employee. She provides evidence that supervisors invited her to apply for the position and saw her as qualified. The hiring committee chose not to promote her. In her stead, the committee hired was a white male who allegedly had significantly fewer credentials than the Plaintiff.

However, Plaintiff fails to rebut Defendant's legitimate, non-discriminatory reasons for choosing another individual to promote. Defendant describes the promotion process as individualized and not pre-determined. (Doc. 32-8 at 3.) In response, Plaintiff states that committee members told her that her people skills were insufficient. Plaintiff viewed this as a "thinly viewed slight regarding [her] sex." (Doc. 33-A.) But Plaintiff fails to link her prior experiences with sexism with the denial of the promotion based on time, decision-makers, or other variables. Plaintiff's allegations of sexism relate to incidents that occurred significantly prior to 2019.

At the summary judgment phase, the plaintiff must demonstrate "a conflict in substantial evidence to create a jury question." *Grimes*, 102 F.3d at 141. Plaintiff fails to provide more than minimal circumstantial evidence to connect the sexist commentary she has faced to the decision against her promotion. Therefore, the Court would have to dismiss Plaintiff's failure-to-promote claim even if it were not time-barred.

### C. First Amendment Retaliation Under § 1983 Against Individual Defendants

Plaintiff alleges First Amendment retaliation against individual defendants. She affirmatively abandoned any retaliation claims against the Office at the Court's November 18, 2022 hearing.

"While all citizens enjoy the protections of the First Amendment, the appropriate analytical framework for applying the unconstitutional conditions doctrine to a given First Amendment claim depends on the context in which the claim arose." *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004). In "governmental employee" cases, by contrast, courts must be attentive to the "[t]he government's interest in achieving its goals as effectively and efficiently as possible," which interest "is elevated from a relatively subordinate interest when it acts as sovereign to a significant one when it acts as employer." *Waters v. Churchill*, 511 U.S. 661, 675 (1994).

To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a public employee must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighed the defendant's interests in promoting workplace efficiency; and (4) her speech was a substantial or motivating factor in the defendants' adverse employment action. *Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014). Defendants challenge the second and third factors. (Doc. 32 at 22.)

With respect to the second factor, Defendants argue that Plaintiff's speech went beyond matters of public concern to a personal attack on Blue. Plaintiff, however, argues that she merely stated what she thought others would say. "[I]n determining whether speech involved a matter of public concern, a court must shift its focus 'from the content of the speech to the role the speaker occupied when [s]he said it.'" *Ricci v. Cleveland Indep. Sch. Dist.*, 2012 WL 2935200, at *5 (S.D. Tex. July 17, 2012) (citing *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir. 2008)).

> In determining whether speech was made pursuant to an individual's official duties, courts review a number of non-dispositive factors, including: the employee's formal job description; whether the employee spoke on the subject matter of his or her employment; whether the employee raised complaints or concerns up the chain of command; and whether the speech resulted from special knowledge gained as an employee.

*Id.*

In this case, Plaintiff was engaged in a political conversation on a short break from work. Her statements reflected public events, even if she directed them at an individual's personal life. *See Branton v. City of Dallas*, 272 F.3d 730, 739 (5th Cir. 2001) (internal quotation omitted) ("Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community.") The conversation was in no way related to Plaintiff's job. Thus, a reasonable jury could easily find that Plaintiff's speech involved matters of public concern.

Concerning the third factor, when a public employee speaks on a matter of public concern, the Court must perform a balancing test to determine whether the employee's interest in expression outweighs the government's interest in promoting efficiency. *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). In weighing the competing interests of the employee and employer, the Court considers:

> (1) the degree to which the employee's activity involved a matter of public concern; (2) the time, place, and manner of the employee's activity; (3) whether close working relationships are essential to fulfilling the employee's public responsibilities and the potential effect of the employee's activity on those relationships; (4) whether the employee's activity may be characterized as hostile, abusive, or insubordinate; and (5) whether the activity impairs discipline by superiors or harmony among co-workers.

*Jordan v. Ector County*, 516 F.3d 290, 299 (5th Cir. 2008).

In this case, the Office had a legitimate interest in complying with Title VII and its non-discrimination policies by limiting harmful speech in the workplace. While the conversation arose during a break and involved political matters, the incident occurred in a public area during the

13

workday and within earshot of many co-workers. Plaintiff's conversation also verged into a direct attack on a co-worker. Blue did not initially report the incident, but he did go so far as to ask not to work with Plaintiff again. Plaintiff's conduct impaired harmony and efficiency in the workplace. Therefore, Plaintiff fails to establish a constitutional violation.

Because there is no constitutional violation, the Court does not need to delve into Defendants' assertion of qualified immunity. The Court must dismiss Plaintiff's First Amendment claims.

### III. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED** in full. Because no claims remain, Defendants' Motion for Leave to File Amended Answers is **DENIED** as moot.

**IT IS SO ORDERED**.

Signed at Houston, Texas on November 29, 2022.

Keith P. Ellison
United States District Judge